# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**IAN W. THOMPSON**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**V. SAMUEL LAURIN, III**
**BRYAN H. BABB**
**JOEL T. NAGLE**
Bose McKinney & Evans LLP
Indianapolis, Indiana

FILED

Jun 10 2014, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LORA HOAGLAND, | ) | |
| | ) | |
| Appellant/Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1301-PL-44 |
| | ) | |
| FRANKLIN TOWNSHIP COMMUNITY | ) | |
| SCHOOL CORPORATION, | ) | |
| | ) | |
| Appellee/Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-1111-PL-42082

**June 10, 2014**

**OPINION - FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Indiana's public schools lost hundreds of millions of dollars when new property-tax caps went into effect in 2010. Franklin Township Community School Corporation ("Franklin Township")—one of a number of school corporations hit hardest by the new property-tax caps—responded by eliminating student transportation for the 2011-2012 school year. Franklin Township later contracted with an educational service center to provide student transportation for an annual fee. In November 2011 township parents filed a class-action lawsuit against the school corporation, challenging the constitutionality of its actions.

Though this case raises a number of legal questions, one is of primary importance: did Franklin Township act unconstitutionally with respect to student transportation? Applying our Supreme Court's reasoning in *Nagy v. Evansville-Vanderburgh School Corp.*, 844 N.E.2d 481 (Ind. 2006), we conclude that it did. We affirm in part and reverse in part.

**Facts and Procedural History**

In 2010 the Franklin Township School Board voted to eliminate student transportation for the 2011-2012 school year. Franklin Township then transferred its transportation equipment, including its buses, to Central Indiana Educational Service Center ("CIESC").[1] CIESC, in turn, offered transportation services to Franklin Township parents. Parents who signed a transportation contract with CIESC received a year of transportation to and from school for one child for $475 and a $20 non-refundable

---

[1] Franklin Township sold its equipment to CIESC for one dollar. Appellants' App. p. 64.

deposit. A year of transportation for each additional child cost $405. Franklin Township did not receive any of the money paid to CIESC. Signing a contract with CIESC was optional; some parents chose to utilize CIESC for student transportation while other parents made alternate arrangements.

In July 2010, in response to an inquiry from the State Examiner, the Attorney General of Indiana issued an official opinion advising that Indiana's public-school corporations were "not authorized to assess and collect a bus[-]rider fee from a student in order for that student to receive transportation to and from the student's school to receive a public education. Such a fee is unconstitutional." Appellants' App. p. 23. The Attorney General cited our Supreme Court's opinion in *Nagy*, 844 N.E.2d at 481, explaining that *Nagy* "provides the following analytical framework [] for examining a fee or charge for services by a public[-]school corporation":

> Is the program, activity, project, service[,] or curricula mandated by the legislature or permitted by the legislature? If so, then "the legislature has made a policy decision regarding exactly what qualifies for funding at public expense."
>
> Although the legislature has the authority to place appropriate condition[s] or limitations on funding for such programs, "absent statutory authority, fees or charges for what are otherwise public education cost items cannot be levied directly or indirectly against students or their parents."

*Id.* at 26-27 (citations omitted, formatting altered). Citing several sections of the Indiana Code, the Attorney General concluded that the Indiana General Assembly "has identified transportation of school children as a part of what would constitute a uniform system of public education in Indiana," and pursuant to *Nagy*, a "school[-]bus rider fee is unconstitutional" under Article 8, Section 1 of the Indiana Constitution. *Id.* at 30-31.

3

Despite this, Franklin Township proceeded with its plan to discontinue student transportation, and township parents were faced with a choice: pay the transportation fee or make alternate transportation arrangements for their children. Lora Hoagland, whose two sons qualified for the federal free-and-reduced-lunch program, opted to drive her children to and from school.

On November 10, 2011, the Attorney General issued a second official opinion addressing Franklin Township's actions directly. Again citing *Nagy*, the Attorney General advised that:

> An [Educational Service Center] is the agent of the school corporation and may not charge parents for transporting students to and from school. Such a fee is unconstitutional.
>
> *Franklin Township Community School Corporation's transportation arrangement does not comply with state law as the school is attempting to do indirectly what it is prohibited from doing directly*.
>
> &#42; &#42; &#42; &#42; &#42;
>
> Schools may utilize private parties for provision of student[-]transportation services, but neither the school nor the private party may charge fees to the parents for the provision of such services.
>
> Schools may utilize [Educational Service Centers] for provision of student transportation services, but neither the school nor the [Educational Service Center] may charge fees to parents for the provision of such services.

*Id.* at 33 (emphasis added, formatting altered).

The next day Hoagland and Donna Chapman—a Franklin Township parent who had entered into a transportation contract with CIESC—filed a class-action lawsuit against Franklin Township and CIESC, alleging that Franklin Township had "unlawfully fail[ed] to provide transportation," and seeking declaratory, injunctive, and monetary

4

relief. *Id.* at 10-11. After the lawsuit was filed, the Franklin Township School Board voted to resume busing its students to and from school at no charge.

The trial court granted Hoagland's request for class certification and created two classes: "the paying class"—those individuals who entered into a contract with CIESC and paid the transportation fee—and "the non-paying class"—those individuals who made alternate transportation arrangements for their children. Hoagland is the named plaintiff for the non-paying class and Chapman is the named plaintiff for the paying class.

CIESC filed a motion to dismiss the claims against it. Appellee's App. p. 10-25. The trial court granted CIESC's motion. Appellants' App. p. 92. Chapman appealed, and another panel of this Court affirmed.[2] *Chapman v. Cent. Ind. Educ. Ctr.*, 49A05-1209-PL-478 (Ind. Ct. App. Apr. 30, 2013), *trans. denied*.

Only Hoagland's and Chapman's claims against Franklin Township remained. In August 2012, all three parties filed summary-judgment motions. After oral argument, the trial court granted summary judgment for Franklin Township. Appellants' App. p. 49-61. In relevant part, the court concluded that: (1) the Indiana Tort Claims Act ("ITCA") barred Hoagland's and Chapman's claims; (2) Hoagland and Chapman were not entitled

---

[2] In affirming the trial court, this Court wrote:

[C]hapman alleged in her complaint that "the CIESC contract is an unenforceable adhesion contract, that it is illegal, that it unlawfully purports to limit parents' remedy and is void as against public policy." Chapman does not further allege why the CIESC contract is an adhesion contract, why it is illegal, why it unlawfully limited parents' remedy, or how it is void against public policy. Chapman entered into a contract with CIESC, under which CIESC, a private vendor, was to transport her child to school in exchange for a fee paid by Chapman. Chapman paid the fee and received bus services from CIESC for the 2011-2012 school year, and that contract between the parties is now completed.

*Chapman v. Cent. Ind. Educ. Ctr.*, 49A05-1209-PL-478 (Ind. Ct. App. Apr. 30, 2013) (references omitted), *trans. denied.*

5

to monetary damages; and (3) Franklin Township did not violate the Indiana Constitution by discontinuing student transportation to and from school. *Id.* at 50.

Hoagland—but not Chapman—appeals.

## Discussion and Decision

On appeal, Hoagland contends that Franklin Township, through CIESC, violated the Indiana Constitution by charging a transportation fee. She argues that student transportation to and from school is an integral part of public education, so Franklin Township may not charge for it—or discontinue it. In response, Franklin Township argues that Hoagland's claim is barred by the ITCA and the Indiana Constitution does not authorize the monetary relief that Hoagland seeks. Franklin Township also contends that it has no constitutional duty to bus its students to and from school under the Education Clause or any other Indiana law.[3]

## I. Standard of Review

Hoagland appeals the trial court's grant of summary judgment for Franklin Township. "In reviewing an appeal of a motion for summary judgment ruling, we apply the same standard applicable to the trial court." *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013) (citations omitted). Our review is limited to the facts that were designated to the trial court, Ind. Trial Rule 56(H), and summary judgment shall be granted where the designated evidence "shows that there is no genuine issue as to any

---

[3] Franklin Township also argues that Hoagland lacks standing to assert the paying class's claims, and we agree. In December 2012 the trial court granted summary judgment for Franklin Township on Hoagland's and Chapman's constitutional claims. While Chapman, on behalf of the paying class, had appealed the grant of summary judgment for CIESC, she did not appeal the grant of summary judgment for Franklin Township—only Hoagland did. Moreover, Hoagland is not in a position to raise the paying class's legal challenges: she never entered into a transportation contract with CIESC, which forms the basis of the paying class's claims.

material fact and that the moving party is entitled to a judgment as a matter of law." T. R. 56(C). "All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party." *Meredith*, 984 N.E.2d at 1218 (citation omitted). "When faced with competing motions for summary judgment, our analysis is unchanged and we consider each motion separately construing the facts most favorably to the non-moving party in each instance." *Id.* (internal quotation omitted). Where, as here, the facts are not disputed, our review is de novo. *Justice v. Am. Family Mut. Ins. Co.*, 4 N.E.3d 1171, 1174-75 (Ind. 2014).

## II. Hoagland's State Constitutional Claim is not Subject to the ITCA

Whether the ITCA applies to state constitutional claims appears to be an issue of first impression. This Court has previously held that claims against school corporations are subject to the ITCA. *See Simpson v. OP Prop. Mgmt., LLC*, 939 N.E.2d 1098, 1102 (Ind. Ct. App. 2010), *trans. denied*; *Meury v. Eagle-Union Cmty. Sch. Corp.*, 714 N.E.2d 233, 241 (Ind. Ct. App. 1999), *trans. denied.* Hoagland acknowledges that she is suing a school corporation. However, she argues that she is asserting a state constitutional claim, not a tort claim, and asks us to declare that the ITCA does not apply to her state constitutional claim.

This issue has been raised in federal district court. In 2000, in an opinion on summary judgment, Judge John Tinder wrote:

> The Defendants first argue that the Plaintiff has waived his [Indiana] constitutional claims for failure to file a timely tort claim notice. They have not cited to any case which holds that a state constitutional claim is governed by [the ITCA], and the court's own research has located none. It is unclear whether the Indiana courts would require a tort claim notice to be filed with respect to state constitutional claims.

*Baker v. Washington Bd. of Works*, 2000 WL 33252101 at *7 (S.D. Ind. June 8, 2000), *recons. granted in part on other grounds*, 2000 WL 964934. "In the absence of any [] authority" holding that the ITCA applies to non-tort claims, Judge Tinder "decline[d] to impose such a requirement . . . ." *Id.* Three years later, in *Schreiber v. Lawrence*, 2003 WL 1562563 *6 (S.D. Ind. Mar. 4, 2003), Judge David Hamilton noted that it was still unclear whether Indiana courts would apply the ITCA to state constitutional claims.

When interpreting a statute, we independently review a statute's meaning and then apply it to the facts of the case being reviewed. *Jones v. Ind. Farmers Mut. Ins. Co.*, 926 N.E.2d 116, 121 (Ind. Ct. App. 2010). First, we determine whether the legislature has spoken clearly and unambiguously in the statute. *Id.* If a statute is unambiguous—meaning it is not susceptible to more than one interpretation—we will apply its clear and plain meaning. *Id.*

By its express language, the ITCA "applies only to a claim or suit in tort." Ind. Code § 34-13-3-1. A tort is defined as "a civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages; a breach of duty that the law imposes on persons who stand in a particular relation to one another." Black's Law Dictionary 1526 (8th ed. 2004). Hoagland's claim sounds in Indiana's Education Clause, not tort law, and for reasons explained below, she may not seek monetary

damages.[4]  Moreover, this case does not involve the type of loss contemplated by the ITCA: in general, the ITCA requires a plaintiff to give notice of a claim soon after a loss occurs, and the ITCA defines "loss" as "injury to or death of a person or damages to property."  Ind. Code § 34-6-2-75.  Therefore, in light of the ITCA's express language, we conclude that the ITCA does not govern Hoagland's state constitutional claim.[5]

### III. Hoagland May Not Seek Monetary Damages

Hoagland seeks monetary damages from Franklin Township.  *See* Appellants' App. p. 10-11.  In granting summary judgment for the township, the trial court held that "the Education Clause does not afford the Plaintiff a private cause of action for monetary damages . . . ." *Id.* at 57.  We agree.

There is no express or implied right of action for monetary damages under the Indiana Constitution.  In *Smith v. Indiana Department of Correction*, 871 N.E.2d 975, 985-86 (Ind. Ct. App. 2007), *trans. denied*, this Court held that:

> [N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution.  With respect to Article 1 Section 12 of the Indiana Constitution, the Indiana Supreme Court has "never held that the Open Courts Clause provides a substantive 'right' of access to the courts or to bring a particular cause of action to remedy an asserted wrong." *Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 511 (Ind. 2005). With one exception, the federal district courts that have addressed the issue have found it unlikely that Indiana Courts would recognize an implied right of action for damages under the Indiana Constitution. *See, e.g., Fidler v. City of Indpls.*, 428 F. Supp. 2d 857, 865 (S.D. Ind. 2006).  In making this determination, the district courts reasoned that Indiana's courts have been hesitant to recognize implied rights of action under Indiana statutory law, and it is unlikely that the framers of the Indiana Constitution intended such an action because they would have understood sovereign

---

[4] In *Cantrell v. Morris*, 849 N.E.2d 488, 605 (Ind. 2006), our Supreme Court recognized that the ITCA does not apply to federal constitutional claims based on 42 U.S.C. § 1983.

[5] For this reason we need not consider whether Hoagland complied with the ITCA's provisions.

immunity to bar such an action. *Baker*, 2000 WL 33252101 at *8. *Since there is no express or implied right of action for monetary damages under the Indiana Constitution*, Smith cannot succeed on such a claim.

(Formatting altered, emphasis added).[6] Because there is no right of action for monetary damages under the Indiana Constitution, Hoagland cannot succeed on her damages claim.

## IV. Public-School Transportation in Indiana

Hoagland also seeks a declaratory judgment that Franklin Township acted unconstitutionally by discontinuing student transportation and contracting with CIESC to provide student transportation for a yearly fee.[7] She argues that this student-transportation fee violates the Education Clause, Article 8, Section 1 of the Indiana Constitution. In essence, her argument is that student transportation is an integral part of public education, so Franklin Township may not charge for it—or discontinue it. In response, Franklin Township argues that it has no constitutional duty to transport its students to and from school. The trial court determined that Franklin Township acted constitutionally with respect to student transportation and denied Hoagland's request for a declaratory judgment. For reasons explained below, we find that this was error.

---

[6] *See also Cantrell*, 849 N.E.2d at 499 ("There is no explicit language in the Indiana Constitution providing any specific remedy for violations of constitutional rights."). Federal district courts have also held that there is no right of action for monetary damages under the Indiana Constitution. *See, e.g.*, *Greater Indianapolis Chapter of N.A.A.C.P. v. Ballard*, 741 F. Supp. 2d 925, 934 (S.D. Ind. 2010) ("Going back to at least 2000, and after *Cantrell*, the judges of this District have refused to recognize implied rights of action under the Indiana Constitution.").

[7] Declaratory relief is appropriate in this case. "The test to determine the propriety of declaratory relief is whether the issuance of a declaratory judgment will effectively solve the problem involved, whether it will serve a useful purpose, and whether [] another remedy is more effective or efficient." *Hood's Gardens, Inc. v. Young*, 976 N.E.2d 80, 84 (Ind. Ct. App. 2012) (citing *Boone Cnty. Area Plan Comm'n v. Kennedy*, 560 N.E.2d 692, 696 (Ind. Ct. App. 1990), *trans. denied*). "The determinative factor of this test is whether the declaratory action will result in a just and more expeditious and economical determination of the entire controversy." *Id.* (citing *Ferrell v. Dunescape Beach Club Condo. Phase I, Inc.*, 751 N.E.2d 702, 708 (Ind. Ct. App. 2001)). As school corporations across the state are grappling with budget and transportation issues, declaratory judgment in this case will be a useful step toward resolving the controversy.

*A. The Education Clause and the Education Code*

The Education Clause, Article 8, Section 1, of the Indiana Constitution, states:

> Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; it shall be the duty of the General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all.

The Education Clause expresses two duties of the General Assembly: (1) the duty to encourage moral, intellectual, scientific, and agricultural improvement and (2) the duty to provide for a general and uniform system of open common schools without tuition. *Meredith*, 984 N.E.2d at 1220-21.

Our legislature has enacted a detailed and comprehensive body of law aimed at providing a general and uniform system of public schools. *See* Titles 20 and 21 of the Indiana Code ("the Education Code"). The Education Code makes numerous provisions for public-school transportation in Indiana. One provision, Indiana Code section 20-27-5-2, is particularly relevant to our analysis.

Section 20-27-5-2 authorizes school corporations to transport their students to and from school. Critically, after suit was filed against Franklin Township, our legislature amended Section 20-27-5-2 to prohibit school corporations from charging a transportation fee:

> (a) The governing body of a school corporation may provide transportation for students to and from school.[8]
> (b) If the governing body of a school corporation:

---

[8] This first sentence was present in the original statute enacted in 2005. The remaining text was added by the 2012 amendment. *See* P.L. 140-2012 (eff. July 1, 2012).

11

> (1) provides transportation; or
>
> (2) contracts with an educational service center (as defined by IC 20-20-1-2) to provide transportation;
>
> *no fee may be charged to a parent or student for transportation to and from school*. However, a fee may be charged for transportation to and from an athletic, a social, or another school sponsored function.

(Emphasis added). The Education Code contains other provisions that pertain to school corporations' transportation of students, *see* Ind. Code § 20-26-5-4(10), as well as parents' rights to arrange transportation for their children, *see* Ind. Code ch. 20-27-6.

Notably, however, Indiana law also requires that some students be transported to and from school. School corporations must transport students with disabilities,[9] 511 Ind. Admin. Code 7-36-8, homeless students, Ind. Code § 20-27-12-4, students in foster care, Ind. Code § 20-50-3-5, and in certain circumstances, private-school students, Ind. Code § 20-27-11-1.[10]

### B. *Nagy v. Evansville-Vanderburgh School Corporation*

*Nagy* provides the analytical framework for examining a fee or charge for services by a school corporation.

---

[9] *See also* Ind. Code § 20-35-8-1(a)(1) (except as otherwise provided, if a student with legal settlement in a school corporation is transferred to another school corporation because of a disability, the transferor corporation must either provide transportation or pay transportation costs).

[10] Section 20-27-11-1 provides:

Sec. 1. (a) If a student who attends a nonpublic school in a school corporation resides on or along the highway constituting the regular route of a public school bus, the governing body of the school corporation shall provide transportation for the nonpublic school student on the school bus.

(b) The transportation provided under this section must be from the home of the nonpublic school student or from a point on the regular route nearest or most easily accessible to the home of the nonpublic school student to and from the nonpublic school or to and from the point on the regular route that is nearest or most easily accessible to the nonpublic school from which the student can walk to and from the nonpublic school.

In *Nagy*, the Evansville-Vanderburgh School Corporation ("EVSC") imposed a $20 fee on all students from kindergarten through twelfth grade. 844 N.E.2d at 483. The "student-services fee" was used to fund, among other things, a student-services coordinator, nurses, media specialists, alternative education, elementary-school counselors, a police-liaison program, and activities such as athletics, drama, and music. *Id.* The fee was charged to every student, even those students who qualified for the federal free-and-reduced-lunch program. *Id.* If the student-services fee was not paid, EVSC would send a notice to the student's parents threatening to refer the matter to a law firm for collection. *Id.*

Parents of children who qualified for the federal free-and-reduced-lunch program filed a class-action lawsuit seeking declaratory and injunctive relief. In relevant part, the complaint alleged that the student-services fee violated Article 8, Section 1 of the Indiana Constitution. The trial court ultimately granted summary judgment in favor of EVSC.

This Court reversed, and our Supreme Court granted transfer. On transfer, our Supreme Court found EVSC's student-services fee unconstitutional based on our legislature's actions:

> *Where the legislature . . . has identified programs, activities, projects, services or curricula that it either* **mandates or permits** *school corporations to undertake, the legislature has made a policy decision regarding exactly what qualifies as a part of a uniform system of public education commanded by Article 8, Section 1 and thus what qualifies for funding at public expense.* And of course the legislature has the authority to place appropriate conditions or limitations on any such funding. However, absent specific statutory authority, fees or charges for what are otherwise public education cost items cannot be levied directly or indirectly against students or their parents. Only programs, activities, projects, services or curricula that are outside of or expand upon those identified by the legislature—what we understand to be "extracurricular"—may be considered as not a part of a

13

publicly-funded education. And thus a reasonable fee may be assessed, but only against those students who participate in or take advantage of them.

*Id.* at 492 (emphases added). Because the student-services fee was used to fund things such as a student-services coordinator, nurses, media specialists, alternative education, elementary-school counselors, a police-liaison program, and activities such as athletics, drama, and music, and the legislature had "already determined that all such items are part and parcel of a public school education and by extension qualify for public funding," the Court ruled that the fee was unconstitutional. *Id.* at 493.

### C. Franklin Township Acted Unconstitutionally

Applying *Nagy* to the facts of this case, we conclude that Franklin Township acted unconstitutionally. Our legislature has determined that school corporations "may" transport their students to and from school. *See* Ind. Code § 20-27-5-2. Thus, pursuant to *Nagy*, the legislature has determined that transportation to and from school qualifies as a part of a uniform system of public education. 844 N.E.2d at 492 ("Where the legislature . . . has identified . . . services . . . that it either mandates or permits school corporations to undertake, the legislature has made a policy decision regarding exactly what qualifies as a part of a uniform system of public education . . . ."). Franklin Township's arrangement with CIESC—which is, by definition, Franklin Township's agent[11]—to transport its students to and from school for an annual fee violated the Education Clause. *See id.* ("[F]ees or charges for what are otherwise public education cost items cannot be levied directly or indirectly against students or their parents."). This conclusion is consistent

---

[11] *See* Ind. Code § 20-21-1-2(a) (defining an "educational service center" as "an extended agency of school corporations . . . .").

with the 2012 amendment to Section 20-27-5-2, which now prevents school corporations from charging a fee for transporting students to and from school.

If Indiana's school corporations may not charge a fee for transporting students to and from school, may they stop transporting students to and from school? Franklin Township says yes; it argues that it may discontinue student transportation because the Education Code has only authorized—not mandated—student transportation.[12] But that is not entirely accurate: Indiana's school corporations must transport homeless students, foster-care students, special-needs students, and even private-school students who live on or near a school bus route. It is hard to image that the legislature meant to require our school corporations to transport these students but exclude all others.[13] It is similarly

---

[12] Interestingly, neither party cites Chapter 20-27-13, which went into effect March 19, 2012, and discusses the termination of school transportation. The Chapter applies to any "school corporation that carried out a general program in at least one (1) school year beginning after June 30, 2010, to provide transportation to and from school for eligible students." Ind. Code § 20-27-13-2. Of particular significance is Section 20-27-13-3, which authorizes school corporations to stop transporting "eligible students" to and from school:

> Except as provided in section 7 of this chapter, a school corporation described in section 2 of this chapter shall carry out a program to provide transportation to and from school for all eligible students in any part of a school year beginning after June 30, 2012, unless the governing body of the school corporation:
>
> > (1) approves the termination of the transportation program; and
> >
> > (2) provides public notice of the date after which the transportation will no longer be provided under the transportation program;
>
> at least three (3) years before the date after which the transportation will no longer be provided under the transportation program.

An "eligible student" is defined as an individual who is enrolled in a school corporation, has legal settlement in the school corporation, attended school in the school corporation's taxing district, and is not required by federal or state law to receive transportation services to and from school. Ind. Code § 20-27-13-1. Because neither party cites Chapter 20-27-13, we do not raise it sua sponte.

[13] Responding to concerns about budget shortfalls and student transportation, the legislature recently enacted Indiana Code section 6-1.1-20.6-9.9, which works in conjunction with Indiana Code section 5-1-5-2.5. Section 5-1-5-2.5 diverts money from school corporations' transportation funds to pay

15

difficult to comprehend, returning to *Nagy*, that if transportation to and from school is "part and parcel of a public[-]school education," school corporations could simply discontinue it without running afoul of the Indiana Constitution.[14]

Franklin Township's statutory argument is not a persuasive one, and the township offers no justification for departing from the logic found in *Nagy*. For this reason, we conclude that Franklin Township also acted unconstitutionally when it discontinued student transportation to and from school.

In summary, we affirm in part and reverse in part. We affirm the trial court's conclusion that Hoagland is not entitled to legal relief, as there is no right of action for monetary damages under the Indiana Constitution. However, we conclude that the ITCA does not apply to Hoagland's state constitutional claim, and we reverse the trial court on that ground. We also conclude that Franklin Township acted unconstitutionally by discontinuing student transportation to and from school and by later contracting with CIESC to provide that transportation for a yearly fee, and Hoagland is entitled to declaratory judgment to that effect. We therefore reverse the trial court's denial of declaratory judgment and remand to the trial court with instructions to enter a declaratory judgment consistent with this opinion.

Affirmed in part and reversed in part.

RILEY, J., and MAY, J., concur.

---

their debts. Section 6-1.1-20.6-9.9 offers school corporations that lost at least ten percent of their property-tax funds a three-year reprieve from the fund-diversion requirement.

[14] Neither party provides any independent constitutional analysis; Franklin Township relies wholly on the Education Code and Hoagland cites *Nagy* to support her claims.